(Not for publication)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| ANEQUA R. JOYCE, et al., | : |
| | : |
| Plaintiffs, | :   Civil No. 04-5345 (RBK) |
| | : |
| v. | :   **OPINION** |
| | : |
| CITY OF SEA ISLE CITY, et al., | : |
| | : |
| Defendants. | : |
| | : |

**KUGLER**, United States District Judge:

This matter comes before the Court on a motion by City of Sea Isle City ("the City"), William J. Kennedy ("Chief Kennedy"), and Jon Gansert (collectively "City Defendants") for reconsideration of this Court's March 31, 2008 Opinion and Order deciding their motion for summary judgment against Anequa R. Joyce, Glendon Durham, and Doretha Waters-Rice (collectively "Plaintiffs"). Additionally before the Court are individual motions for reconsideration of the Court's March 31, 2008 Opinion and Order by Dennis R. Felsing, Elizabeth Tegler, and Angela Davenport. Plaintiffs accuse Defendants of race discrimination in violation of their rights under the United States and New Jersey Constitutions, violations of the New Jersey Law Against Discrimination, and malicious prosecution. For the reasons set forth below, the Court will grant in part and deny in part City Defendants' motion and will deny the motions of Felsing, Davenport, and Tegler.

1

## I.   BACKGROUND

The Court has previously recited the unfortunate facts of this case at length in its March 31, 2008 Opinion, see Joyce v. City of Sea Isle City, No. Civ. A. 04–5345, 2008 WL 906266, at *1-*7 (D.N.J. March 31, 2008), and will not do so again here, except as necessary for the disposition of the pending motions.

## II.   STANDARD

Motions for reconsideration are not expressly recognized in the Federal Rules of Civil Procedure.  See United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999). Generally, a motion for reconsideration is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e), or as a motion for relief from judgment or order under Federal Rule of Civil Procedure 60(b).  See id.  In the District of New Jersey, Local Civil Rule 7.1(i) (formerly 7.1(g)) governs motions for reconsideration.  See Byrne v. Calastro, Civ. A. No. 05-CV-68 , 2006 WL 2506722, at * 1 (D.N.J. Aug. 28, 2006).

Local Civil Rule 7.1(i) permits a court to reconsider a prior decision upon a showing that the court overlooked dispositive factual matters.  See Bryan v. Shah, 351 F. Supp. 2d 295, 297 (D.N.J. 2005).  Rule 7.1(i) does not contemplate a recapitulation of arguments considered by the court before rendering its decision.  See Bermingham v. Sony Corp. of Am., Inc., 820 F. Supp. 834, 856 (D.N.J. 1992), aff'd 37 F.3d 1485 (3d Cir. 1994).  A court may grant a motion under Rule 7.1(i) only if: (1) "an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice."  Database Am., Inc. v. Bellsouth Adver. & Publ'g Corp., 825 F. Supp. 1216, 1220 (D.N.J. 1993).

2

Ordinarily, a motion for reconsideration may address only those matters of fact or issues of law which were presented to, but not considered by, the court in the course of making the decision at issue.  See SPIRG v. Monsanto Co., 727 F. Supp. 876, 878 (D.N.J.), aff'd, 891 F.2d 283 (3d Cir. 1989).  Thus, reconsideration is not to be used as a means of expanding the record to include matters not originally before the court.  See Resorts Int'l v. Greate Bay Hotel & Casino, Inc., 830 F. Supp. 826, 831 & n.3 (D.N.J. 1992).  Absent unusual circumstances, a court should reject new evidence which was not presented when the court made the contested decision.  See id.  A party seeking to introduce new evidence on reconsideration bears the burden of first demonstrating that evidence was unavailable or unknown at the time of the original hearing.  See Levinson v. Regal Ware, Inc., Civ. No. 89-1298, 1989 WL 205724, at *3 (D.N.J. Dec. 1, 1989).

Reconsideration is "an extraordinary remedy," and a court should grant it "very sparingly."  NL Indus. Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996).  "[M]ere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for reargument."  Yurecko v. Port Auth. Trans. Hudson Corp., 279 F. Supp. 2d 606, 609 (D.N.J. 2003).

## III.   DISCUSSION

### A.   Waters-Rice's False Arrest Claim

In their motions for reconsideration, City Defendants and Officer Felsing argue this Court overlooked the distinction between false arrest and malicious prosecution under the Fourth Amendment articulated by the Supreme Court in Heck v. Humphrey, 512 U.S. 477, 484 (1994), and more fully explicated in Morales v. Busbee, 972 F. Supp. 254 (D.N.J. 1997).  Neither City Defendants nor Felsing made this argument in their motions for summary judgment, however,

despite Waters-Rice's plain assertion of claims for both false arrest and malicious prosecution.

At no time did City Defendants or Felsing argue that Waters-Rice could not maintain a claim for

false arrest because she had been arrested pursuant to a warrant.  Their argument that <u>Heck</u>

precludes Waters-Rice's false arrest claim may have merit; however, this Court cannot entertain

it for the first time on a motion for reconsideration.  <u>See</u> <u>Bowers v. Nat'l Collegiate Athletic</u>

<u>Ass'n</u>, 130 F. Supp. 2d 610, 613 (D.N.J. 2001) (stating motions for reconsideration "are not an

opportunity to argue what could have been, but was not, argued in the original set of moving and

responsive papers").  As a result, City Defendants' and Felsing's motions for reconsideration

concerning Waters-Rice's false arrest claim will be denied.

**B.      Section 1983 and 1985 Claims**

City Defendants argue the Court overlooked the absence of facts linking any conduct by

the City, Chief Kennedy, or Gansert to Anequa or Glendon.  It is true that in their

counterstatement of material facts, Plaintiffs did not cite any actions by Chief Kennedy or

Gansert towards Anequa or Glendon that would give rise to personal liability.  Nevertheless, the

Court found Plaintiffs had demonstrated triable issues of fact exist concerning whether

Defendants conspired to violate Plaintiffs' civil rights in violation of 42 U.S.C. § 1985(3).  Were

a jury to find such a conspiracy existed, Chief Kennedy and Gansert, as  members of the

conspiracy, would be liable for the acts of their coconspirators whom Anequa and Glendon have

alleged harmed them.  <u>See</u> <u>Parkway Garage, Inc. v. City of Phila.</u>, No. Civ. A. 90-7752, 1994 WL

412430, at *4 (E.D. Pa. Aug. 3, 1994) (noting "proof of a civil conspiracy may broaden the scope

of liability under § 1983 to include individuals who were part of such conspiracy but did not act

directly to deprive a plaintiff's rights" (citing <u>Hostrop v. Bd. of Junior Coll. Dist. No. 515</u>, 523

4

F.2d 569, 576 (7th Cir. 1975), cert. denied, 425 U.S. 963 (1976))); Morgan v. Union County Bd. of Chosen Freeholders, 633 A.2d 985, 999 (N.J. Super. Ct. App. Div. 1993) (stating that under New Jersey law, in civil conspiracies, like criminal ones, "[t]he acts and declarations of a conspirator in furtherance of the conspiracy are binding on all parties to the conspiracy"). Therefore, the Court properly denied City Defendants' motion for summary judgment on Plaintiffs' claims under § 1983.

City Defendants argue further that the Court overlooked the lack of facts implicating Chief Kennedy in any unlawful act or in a conspiracy to commit an unlawful act. While City Defendants are correct that there is no direct evidence of wrongdoing by Chief Kennedy, Plaintiffs have highlighted a host of purportedly unlawful acts on the part of individuals alleged to be his coconspirators, as well as circumstantial evidence placing him at the center of the supposed conspiracy. Specifically, Plaintiffs have offered evidence that over many months, multiple unidentified Sea Isle City police officers routinely responded to or drove by Plaintiffs' home and often made discriminatory or harassing comments to Plaintiffs. Furthermore, Plaintiffs proffered evidence that they each suffered discrimination at the hands of school officials. During these events, Chief Kennedy served as both chief of Sea Isle City's police department and as a member of its school board. Based on these facts, a jury could reasonably conclude there existed "a real agreement or confederation with a common design" of which Chief Kennedy was a part. Farris, 61 F. Supp. 2d at 330. Consequently, City Defendants' motion for reconsideration as to Plaintiffs' § 1983 claims against the City, Chief Kennedy, and Felsing, and regarding Plaintiffs' § 1985 claims against Chief Kennedy will be denied.

### C.   Punitive Damages Against Chief Kennedy and Gansert, Individually

City Defendants contend the Court overlooked undisputed facts as well as mandatory authority entitling Chief Kennedy and Gansert to summary judgment on Plaintiffs' claims for punitive damages against them in their individual capacities.  Plaintiffs merit punitive damages only if they can establish that "the defendants have acted with a 'reckless or callous disregard of, or indifference to, the rights and safety of others.'"  Keenan v. City of Phila., 983 F.2d 459, 470-71 (3d Cir. 1992) (quoting Bennis v. Gable, 823 F.2d 723, 734 (3d Cir. 1987)).  The standard of "callous or reckless indifference" is an objective one, inquiring "whether a reasonable officer would have known that his conduct violated a clearly established constitutional right." Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 873 (M.D. Pa. 2000).

City Defendants correctly indicate it is undisputed that Chief Kennedy did not have any direct contact with Plaintiffs; however, it does not follow that he could not have recklessly disregarded Plaintiffs' civil rights.  As already discussed, evidence exists that supports Chief Kennedy's role in a civil rights conspiracy.  Similarly, Plaintiffs have shown facts suggesting Gansert and Felsing made up facts to support the warrant for Waters-Rice's arrest.  While there is no direct evidence indicative of a discriminatory motive underlying that action, a jury could conclude based on evidence of prior racial harassment of Plaintiffs by Sea Isle City police force that such a motive existed.  It must be for a jury to weigh this evidence, not for the Court on summary judgment.  Thus, City Defendants' motion for reconsideration of the Court's ruling on punitive damages against Chief Kennedy and Gansert will be denied.

###### D.      Municipal Liability

City Defendants argue the Court overlooked Third Circuit case law which entitles the City to summary judgment on the question of municipal liability.  Specifically, City Defendants argue Plaintiffs failed to provide evidence that an identified policymaker for the City either acquiesced in, knew, or should have known about the allegedly discriminatory conduct directed at Plaintiffs.  The Court agrees that its previous finding on this question was in error.

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom."  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury.  Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 689 (1978).  A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict."  Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (plurality opinion)).  A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law."  Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).

Hence, there are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.  The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  The second occurs where "no rule has been

announced as policy but federal law has been violated by an act of the policymaker itself." Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights.'" Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (footnote and citations omitted).

The Court previously overlooked Plaintiffs' failure to identify a policymaker who was the moving force behind the purported custom of discrimination by Sea Isle City officials. While Plaintiffs' evidence certainly could provide evidence of a custom of race discrimination that is "so widespread as to have the force of law," they have not produced facts identifying a particular decisionmaker behind that alleged custom. As such, the Court will grant City Defendants' motion for reconsideration on this issue and grant Sea Isle City summary judgment.

**E.   Felsing's Liability With Respect to Anequa and Glendon**

Felsing asks this Court again to grant him summary judgment on any claims Anequa and Glendon assert against him. He bases his argument on the absence of evidence of any interaction between him and the children. On this point, the Court will clarify its prior opinion. The Court does not construe the facts alleged by Anequa and Glendon as asserting any individual claims against Felsing. Nevertheless, Plaintiffs do offer facts supporting the existence of a conspiracy to violate Plaintiffs' civil rights, including Glendon's and Anequa's, of which a jury could reasonably find Felsing to be a member. Following Waters-Rice's arrest, in which Felsing played a key role, Waters-Rice filed a lawsuit. Thereafter, Glendon and Anequa testified they continued to suffer harassment by police and began to suffer retaliation at school. Therefore,

8

despite the lack of interaction between Felsing and the children, Felsing could be liable for the acts of his alleged coconspirators towards Anequa and Glendon.

### F.    Statute of Limitations

Felsing argues further that the Court erred in finding Plaintiffs were sufficiently diligent in substituting Felsing for a fictitious party in their amended complaint.  The Court cannot discern any law or facts that were overlooked in making its prior determination of this issue. True, Plaintiffs knew Felsing was involved in Plaintiffs' arrest based on the Officer Information Form; however, Plaintiffs had no reason to know Felsing's involvement was actionable until they deposed Gansert and him.  Only during those depositions did Plaintiffs learn Felsing was the source of the false statement that Waters-Rice had expressed her intent to come back to the school.  That newly acquired knowledge supplied Plaintiffs with facts to support a malicious prosecution claim.  Until then, Plaintiffs could not have alleged the requisite element that Felsing acted maliciously or for a purpose other than bringing the plaintiff to justice.  Moreover, there is no suggestion that Plaintiffs delayed unreasonably in conducting discovery in this case. Accordingly, Felsing's motion for reconsideration on the Court's disposition of his statute of limitations argument will be denied.

### G.    Davenport

Davenport seeks reconsideration in three respects.  First, she argues the Court overlooked facts entitling her to summary judgment on Plaintiffs' malicious prosecution claim.  Second, she suggests the Court neglected to state any basis for denying her summary judgment on Plaintiffs' NJLAD hostile school environment claim against her.  Lastly, Davenport argues she should not be liable for any of Plaintiffs' damages because the Court failed to recognize that Plaintiffs have

no evidence that she personally caused any of their harm.

The Court did not interpret Plaintiffs' amended complaint as including a malicious prosecution claim against Davenport for her own actions.  This understanding is confirmed by Plaintiffs' recitation of their surviving claims following the Court's disposition of Defendants' summary judgment motions, which states their Fourth Amendment claims are "not applicable" as to Davenport.  (See 4/9/08 letter from Steven Coren to Magistrate Judge Schneider.) Nevertheless, Davenport could be found liable for the wrongful acts of her alleged coconspirators, including malicious prosecution.

Concerning Davenport's second argument, this Court finds no basis to alter its original disposition; however, the Court will briefly clarify it.  Under the NJLAD, it is unlawful "[f]or any person . . . to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [under the NJLAD]."  N.J. Stat. Ann. 10:5-12(e).  Liability under this provision can be grounded in the failure to stop harassment.  Hurley v. Atl. City Police Dep't, 174 F.3d 95, 127 (3d Cir. 1999). While section 10:5-12(e) has not before been extended to the context of a hostile school environment, this Court can find no reason why the New Jersey Supreme Court would not see fit to do so in light of L.W. ex rel. L.G. v. Toms River Regional Schools Board of Education, 915 A.2d 535 (N.J. 2007), which recognized a cause of action for hostile school environment under the NJLAD.  Davenport, a school administrator charged with overseeing Glendon's special needs, testified she knew Glendon was suffering racial harassment at school, and evidence suggests that harassment continued despite her knowledge.  In addition, she took what could be construed as retaliatory actions towards Glendon after his mother filed a lawsuit against the school alleging race discrimination.  Accordingly, Glendon's hostile school environment claim

10

against Davenport under the NJLAD properly survives.

Finally, the evidence could lead the factfinder to determine that Davenport contributed to Glendon and Anequa's harm, either based on her own alleged retaliation or her participation in the purported conspiracy.  See Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 414 (3d Cir. 2003) ("Proof of a conspiracy makes the conspirators jointly liable for the wrong and resulting damages" (quoting Bd. of Educ., Asbury Park v. Hoek, 183 A.2d 633, 646 (1962))).  Hence, Davenport's motion for reconsideration on the question of her liability for damages will be denied.

### H.    Tegler

Tegler asks for reconsideration of the denial of her summary judgment motion, arguing there are no facts to support her involvement in the alleged conspiracy.  Tegler, however, has raised no facts or law the Court overlooked in reaching its decision.  Plaintiffs have put forth enough evidence from which a jury could reasonably find Tegler participated in a conspiracy to violate Plaintiffs' civil rights.  Thus, her motion for reconsideration will be denied.

## IV.    CONCLUSION

Based on the foregoing reasoning, the Court will grant City Defendants' motion on Plaintiffs' claims against Sea Isle City.  City Defendants' motion will be denied in all other respects.  The Court will deny Felsing's, Davenport's, and Tegler's motions for reconsideration in their entirety.  An accompanying Order shall issue today.


Dated: 7-23-08                                              s/ Robert B. Kugler
                                                ROBERT B. KUGLER
                                                United States District Judge

11